JAMES H. WILLIAMS v. JAMES W. MOLIERE AND WIFE.

*Will.    Trustee.    Powers, by whom may be exercised.*
R. L. s. 2291.

1. Discretionary powers given to a trustee in a will, and also expressly given to *his heirs*, may after his decease be exercised by his heirs.
2. In such case all the heirs should be appointed trustees.

APPEAL from the decree of the Probate Court for the District of Windsor. Heard by the court, December Term, 1887, ROYCE, Ch. J., presiding. Judgment *pro forma* and without hearing that the decision of the Probate Court be affirmed.

The petition to the Probate Court was in substance as follows : That on the 25th day of January, 1855, the will of Thomas Robinson was duly pproved and allowed, which will, after providing for certain legacies and bequests therein named, further provided as follows, viz. :

" The rest and residue of all my estate, both real and personal, remaining at my wife's decease after paying the aforesaid legacy of $2,000 to my adopted daughter, and fulfilling the other provisions of this will, I give, devise and bequeath to James H. Williams, of Rockingham, in the County of Windham, and to his heirs upon the trust, and for the uses and purposes and with the powers hereinafter declared, expressed and given in relation thereto. That is to say, upon trust that he, the said James H. Williams, shall hold, manage and improve the residue of my estate hereby devised to him for the use and to the best advantage of the said Abby Deming or Abby D. Robinson and her children (if she should marry and become the mother of children), and pay over to her from time to time during the term of her natural life as her wants and

convenience may require ; and upon her own personal request and receipt only, all and singular the rents, profits, income and interests whatever arising from said trusts estate, after deducting therefrom a fair and reasonable compensation for all time and expenses spent and incurred by him in and about the due execution of this trust. And upon the further trust that if the said Abby should marry and have living issue, then and in such case the said James H. Williams may, and he is fully authorized and empowered to convey, make over and deliver to the said Abby, upon her own personal receipt only, the whole or any part of the said residue or trust estate, if he should, in his own sound discretion think it prudent, proper, and for the best interest of the said Abby so to do, in which case the said Abby's receipt shall be his full and sufficient release and discharge therefor.

" And upon this further trust that the said James H. shall, upon the decease of the said Abby convey, deliver and pay over all the said trust estate and the income and increase thereof remaining in his hands unexpended and unconveyed and unpaid to the said Abby to the several persons and in the several proportions following : that is to say, to the children of the said Abby (if she should have children) one equal quarter part thereof; to Hannah Harris  *  *  * one equal quarter part thereof; to Henry Hutchinson, etc.   *   *   * provided always that the said Williams shall be entitled to receive from said trust estate a fair and reasonable compensation for his services and expenses in and about the same before distribution shall be made.

" And if said Abby shall die during the lifetime of my wife, then I give, devise and bequeath all the residue of my estate, real and personal, of whatever name or nature remaining undisposed of and unexpended by my wife at the time of her death to the several persons to whom I have directed the said Williams to convey and pay over the residue of the trust estate which might remain in his hands upon the decease of the said Abby in case she should survive my wife, as is hereinbefore provided, upon the same contingencies and in the same proportions, and so to their respective heirs forever."

The will was dated January 25, 1853.

" Your petitioner further shows that at some time prior to January 17, 1865, said Polly Robinson, wife of said testator,

died, and upon her decease then came into the hands of said James H. Williams, as trustee under said will, the sum of $5,201.38 in personal estate, together with forty shares in the capital stock of the National Bank of Bellows Falls; that said James H. from time to time paid over to said Abby D. all the rents, profits and income of said trust estate up to the first day of July, 1881; and in the exercise of the discretionary powers vested in him by said will, from time to time paid to said Abby the sum of $3,000 out of the principal of said trust estate, taking her notes for that amount, payable to him as such trustee, but that such payments were intended and understood to be unconditional, and not as loans to be repaid by said Abby, and said notes were taken as a matter of convenience to himself, and not as evidence of indebtedness by said Abby to him as such trustee; that some time prior to the payment of said sum of $3,000, or any portion thereof, to said Abby, she was married to one James W. Moliere, now of San Francisco, California, and had children by said marriage, named Florence E. and James V. Moliere, who are infants, and are living with their mother at San Francisco.

"Your petitioner further shows that on the 13th of August, 1881, said James H. Williams died, and that at the time of his death there remained in his hands as such trustee said forty shares of bank stock and about the sum of $2,200 in other property and securities and said promissory notes; and that on the 3d day of October, 1881, upon application for that purpose, and due notice given, your petitioner was appointed trustee under said will in the place of said James H. Williams, deceased, by the Probate Court for the said District of Windsor, and received as such trustee the sum of $2,261.53 in personal claims, said forty shares of bank stock, and said promissory notes; that he has paid said Abby the income of said trust estate, as the same has accrued and become payable, except so much thereof as has been necessary to pay the reasonable expenses of the petitioner in and about the due execution of said trust; and that said Abby has from time to time applied to your petitioner and represented that she was in need of all, or a portion of the principal of said trust estate, and requested the petitioner to pay to her portions of such principal, and claims that the petitioner, as such trustee, may so exercise the discretionary power lodged in said James H. Williams as trustee named in said will.   *   *   *

"Your petitioner further represents that it is claimed by

several of the parties interested in said trust estate, adversely to said Abby D. Moliere, that he has no authority or right to pay said Abby any portion of the principal of said trust estate, or in any way to exercise the discretionary power in relation thereto lodged in said James H. by the terms of said will.

" The petitioner further represents that he is of the opinion that circumstances have already arisen, or may soon arise, when it will be prudent, proper, and for the best interests of the said Abby, to convey to her a portion or all of said trust estate, but that in view of the conflicting claims of the various parties in interest above set forth, he is in doubt as to his right so to do. Wherefore your petitioner prays that this honorable court may take cognizance of the matters herein set forth, and that he may be authorized and directed to return to said Abby said promissory notes so given by her to said James H. Williams, deceased; and that the amount so paid her by said James H., for which notes were given, be credited the petitioner in his account, and treated as payments made by said James H. by virtue of the discretionary power given him under said will; and that a decree be made and entered by said court which shall define and declare the rights and powers of the petitioner concerning said trust estate."

It was agreed that the facts alleged in the petition were true, and that James H. Williams, the present trustee, was a son and one of the heirs-at-law of James H. Williams, Sr., the original trustee. The Probate Court decreed that the promissory notes given by Abby D. Moliere to James H. Williams, the former trustee, be given up to the said Abby D. by the trustee, and that the amount so paid to her, for which said notes were given, be credited the petitioner in his account, and treated as payments made by said James H. by virtue of the discretionary power given him under said will; secondly, as to so much of the principal of the trust fund as now remains in the hands of the trustee, that the same remain in the hands of the trustee, the income thereof to be applied during the lifetime of said Abby D. to her benefit as stipulated in and by the provisions of the will of Thomas Robinson, and that upon the death of the said Abby D. the same be paid over by him or his successor to the lawful representatives of

the persons named by the said testator, Robinson, as residuary legatees of said trust funds, the court holding that the discretionary power vested in the original trustee does not by law vest in his successor, and that his successor has only power to pay over the income of the trust fund, the surplus of the principal not paid over by the original trustee under exercise of his discretionary power lapsing into the residuum of the estate.

*L. M. Reed,* for the petitioner.

The question is as to the powers of the trustee. The power given to James H. Williams is a mere naked power. It is not coupled with any trust in favor of said Abby so far as relates to the subject-matter of the power. Hill, Tr. p. 70; *Beck's Appeal,* 8 Cent. Rep. p. 99. The confidence reposed in the trustee was strictly personal, and rested in the exercise of his own "sound discretion." Mere powers are discretionary with the donee, and he may or may not exercise them. Perry, Trusts, s. 507; Hill, Tr. 486.

"So these powers can be exercised only by those persons to whom they are expressly confided by the trust instrument; and they will not devolve upon the heir or personal representative of the original trustee, unless they are so limited on the creation of the trust, and where the authority is given to co-trustees without words of survivorship it will be determined on the death of one. So trustees appointed by the court cannot usually execute powers of this nature." Hill, Tr. 488; Perry, Trusts, ss. 496, 497.

Where the consent of any person is required to the execution of a power the condition must be strictly complied with; and if the person whose consent is necessary dies before the execution of a power, and without having assented, the power is gone. *Paroles* v. *Jordan,* 62 Md. 499–504.

The statute does not apply to discretionary trusts. Perry, Trusts, s. 500; *Taintor* v. *Clark,* 15 Met. 220; *Greenough* v. *Welles,* 10 Cush. 471; *Bradford* v. *Marks,* 132 Mass.

407; *Conklin* v. *Edgerton*, 21 Wend. 430. The decree of the Probate Court should be affirmed in all respects.

*W. C. Dunton*, for Moliere and wife.

The present trustee has like power and authority to exercise the discretion given to his father by the will. The statute— R. L. ss. 2291-2—provides that when a trustee dies before the object for which he was appointed is accomplished, and where no adequate provision is made by the will to supply the vacancy, the Probate Court may appoint a new trustee; and the *trustee so appointed* shall have the *same authority* as if appointed by the testator. *Nugent* v. *Cloon*, 117 Mass. 219; *Bradford* v. *Monks*, 132 Mass. 405; *James Schouler, Petitioner*, 134 Mass.

A court of chancery, independent of the statute, will, in certain cases, exercise a discretionary power confided to a trustee, as in this case. *Bull* v. *Bull*, 8 Conn. 47; *Williams* v. *Townshend*, 33 N. J. 393; *Bacon* v. *Bacon*, 55 Vt. 243; Underhill on Trusts, p. 262, *et seq.*

The trustee in this case should be authorized and directed to exercise the discretion by conveying and delivering the trust property to the *cestui que trust*, Mrs. Moliere.

The will clearly shows that it was the intention of the testator that this trust should be executed for the benefit of the said Abby, and even in the absence of a statute like ours a court of equity never allows a trust to fail for the want of a trustee. *Tower* v. *Clark*, 13 Met. 231.

The opinion of the court was delivered by

VEAZEY, J. The counsel for the petitioner claims that the power conferred on James H. Williams, the trustee named in the will, to convey, make over and deliver to Abby Deming the whole or any part of the trust estate, in his discretion, was personal and limited to him, and did not extend to his successors, and this on the ground that such powers can be exercised only by those persons to whom they are confided by the trust

instrument. We arrive at a different result even under the rule which is invoked. The devise was to said Williams, " and to his heirs upon the trust, and for the uses and purposes and with the power hereinafter declared, expressed and given in relation thereto." Not only the trust goes to the heirs, but the power also. Following the above quotation are the clauses directing as to the trust and defining the discretionary power, and in those clauses only the name, James H. Williams, is used; but it is perfectly clear that such mention of his name was not intended as any restriction or limitation upon what preceded, but was used as a mere convenience in defining both the trust and the power reposed, in the previous clause, not only in him but in his heirs. This discretionary legal power was in that clause as expressly given to the *heirs* as to Williams; and where such power is given to heirs it can be exercised by them.

It was early settled that a power could be given to an unknown person or class, as to the heirs of a living man, after his death. 1 Sugden on Powers, p. 148. The author says: " There is a necessity for trusting persons who cannot be personally known, in order to effectuate men's intentions in the exercise of that dominion which the law gives them over their properties. There is nothing absurd in trusting persons not known; nothing incongruous or repugnant to the rules of law."

In reply to the objection that the power may devolve on infants, idiots or lunatics, or such a number of female heirs as will make their agreement very improbable and equivalent to a disability, Mr. Sugden says: " This is an objection to authorities coupled with interests, as well as to mere naked authorities; the disability is the same, but it is no reason against creating such a power, that by accident it cannot be exercised." The author cites Wilmot, notes, 36. In *Cole* v. *Wade*, 16 Ves. 27, the devise and bequest were to two trustees named, their executors, administrators and assigns. The disposition contained a mixture of trust and power. The Master

of the Rolls, Sir WILLIAM GRANT, said : " Though it seems very incongruous and inconsequential to extend to unknown and unascertained persons the power which personal knowledge and confidence had induced the testator to confide to his original trustees and executors, yet I am not authorized to strike these words out of the will upon the supposition, though not improbable, that they were introduced in this part by inadvertence and mistake. I do not apprehend that a bequest actually made, or a power given, can be controlled by the reason assigned. The assigned reason may aid in the construction of doubtful words ; but cannot warrant the rejection of words that are clear." In that case there was a question as to the effect of the words, which does not exist in the case at bar.

This trustee named in the will is dead, and this petitioner is one of his heirs and has been appointed trustee ; but there are other heirs, therefore they should also be appointed trustees. Upon this construction of the will there is no occasion for invoking the aid of our statutes applicable to the case of the appointment of new trustees. Sections 2291-2 R. L.

No question is or could properly be made but that the first branch of the decision of the Probate Court was correct, which related to certain notes which said Abby Deming gave the trustee. But as to the second branch there was error.

The judgment of the County Court is therefore reversed, with costs to the defendants to be paid out of the trust funds ; to be certified to the Probate Court.